```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
                    NORTHERN DIVISION
                     AT COVINGTON
```

**CRIMINAL ACTION NO. 07-39 (WOB)**

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**

**VS.**                  **MEMORANDUM OPINION AND ORDER**

**WILLIAM J. GALLION, ET AL.**                            **DEFENDANTS**

This matter is before the court on Defendants' Emergency Motions to Set Aside the Court's Order of August 14, 2007, setting a bond hearing for Tuesday, August 21, 2007 (Doc. ##52, 53) and the government's response thereto (Doc. #57). To place these motions in context, the court will summarize the procedural history of the case.

*Procedural Background*

**A.   The Indictment and Initial Proceedings**

On June 14, 2007, the defendants were indicted for conspiracy to commit wire fraud. A forfeiture count was also included. (Doc. #1)

On June 21, 2007, the defendants were arraigned before the United States Magistrate Judge, who set a date for a jury trial of August 20, 2007. (Doc. ## 17, 18, 19)  All defendants were released on their own recognizance, without objection by the United States, although a $42,000,000 loss was alleged in the indictment.

On June 22, 2007, the trial date was continued to October 15, 2007. (Doc. #26)

On July 5, 2007, the court granted defendants' motions to extend the deadline for filing defensive motions. The order also contained the following: **"The parties are advised that the trial date of October 15, 2007, will be adhered to barring exceptional circumstances."** (Doc. #41)

### B. The August 10, 2007 Status Conference

On August 10, 2007, the events occurred which are the basis of the motions now before the court. On that date a previously scheduled status conference was held. It was apparent to the court from the outset that neither the defendants nor the United States had made good faith efforts to comply with the court's order of July 7, 2007, admonishing them to adhere to the trial date of October 15. No preparations were underway to prepare for trial by either side. Instead, the court was advised that there were numerous boxes of documents that needed to be reviewed and that it would take several months to review them. All counsel agreed that the trial should be continued more or less indefinitely while they reviewed these documents. One defense attorney suggested a further status conference in December where the court could be advised of the status of this review. All parties joined in an oral motion for continuance. Yet from experience the court knew that if it were necessary to review

these documents, parties with the resources of the defendants could have hired temporary associates or paralegals and reviewed them in a couple of weeks.

In the perception of the court, based upon long experience, the defendants were beginning a delaying action intended to culminate in an O.J. Simpson-type trial, which would take several months, when really the underlying facts (primarily the disposition of the funds involved) were relatively simple.  Of course, the criminal intent of the defendants was and remains the crucial issue, and it must be proved beyond a reasonable doubt, with the defendants being afforded all of their constitutional and statutory rights.  It is not necessary, however, as the court observed years ago in a criminal arson case, to call ten firemen to prove the house burned down.

C. **The Crime Victims' Rights Act**

At this point it became apparent to the court that the rights of the alleged victims in this case were in jeopardy. Specifically, the court was cognizant of the Crime Victims' Rights Act, 18 U.S.C. § 3771 ("CVRA").  This Act is clear, succinct and highly efficacious in achieving its goals.

In pertinent part, the CVRA states:

**(a) Rights of crime victims.**— A crime victim has the following rights:

* * *

(2) The right to reasonable, accurate, and timely notice of

3

any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.

\* \* \*

(4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

(5) The reasonable right to confer with the attorney for the Government in the case.

(6) The right to full and timely restitution as provided in law.

(7) The right to proceedings free from unreasonable delay.

\* \* \*

**(b) Rights afforded.** — In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a).

\* \* \*

**(c) Best efforts to accord rights**. —

> **(1) Government.** — Officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a). . . .

18 U.S.C. § 3771.

Returning to the proceedings in this matter, the court was firmly convinced that the purpose of defendants' tactics was to delay trial – and thus restitution, in the event of any conviction – more or less indefinitely. Thus, there was great risk that any postponement of the October 15 trial date would

4

jeopardize the victims' rights herein.  Particularly, the victims' right to "full and timely restitution as provided by law" and "the right to proceedings free from unreasonable delay" were at risk.  *See* 18 U.S.C. § 3771(a).

With regard to restitution, the United States had advised the court at the outset of the hearing that it had no idea what assets still remained in the hands of the defendants to make the $42 million of restitution alleged to be due in the indictment.

It was and is the opinion of the court that the rights of the victims were not being protected, in accordance with the mandate of the CVRA, as cited above.  The court believes that prompt action to gain control of the situation was and is required.  The court also was convinced that any delay beyond the October 15, 2007 trial date would endanger these rights by allowing the defendants to conceal assets or move them beyond the jurisdiction of the court, absent additional protective measures.  Further, the court concluded that the longer the delay, the greater the risk of flight by the defendants.  Yet the court also recognized that its refusal to permit any extension, in the face of apparent unanimity among counsel that additional preparation time was warranted, could jeopardize the validity of any conviction on appeal.

Therefore, the court advised counsel for the defendants that, if the trial had to be continued, it would be necessary for

the court to revoke the defendants' bond, and the court took a recess so that defendants could consider their options. When the court returned to the bench, all parties continued to press for a continuance. Therefore, the court granted the continuance, and as it had clearly stated it would, revoked the defendants' bond. On the afternoon of August 10, 2007, the court entered an appropriate temporary detention order.

On August 14, 2007, the court set the hearing required by 18 U.S.C. §§ 3142(f) and (g) for August 21, 2007. Between the entry of these two orders, however, defendants filed notices of appeal to the Sixth Circuit. (Docs. ##44, 46, 48)

Defendants then filed the present motions asserting that their filing of notices of appeal deprives this court of jurisdiction to hold the hearing presently set for August 21, 2007.

### *Analysis*

Section 3142 of Title 18 of the United States Code governs the release or detention of a defendant pending trial. That statute provides for a two-step process when the court determines after a defendant's initial appearance and bond hearing that conditions since the initial hearing have changed. The pertinent paragraph reads:

> The [initial] hearing may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the [court] at the time of the [initial] hearing and that has a material bearing on the

>      issue whether there are conditions of release that will
>      reasonably assure the appearance of such person as required
>      . . .

18 U.S.C. § 3142(f)(2)(B).

The same paragraph also provides that the defendant "may be detained pending completion of the hearing." *Id.*

Thus, these provisions provide for a two-step process: (1) an initial order of detention, and (2) the holding of a hearing to make a final determination, subject to subsequent developments, of the proper terms of detention or release.

Further, it is well settled that the district court "has jurisdiction to reopen the bail issue on its own motion," regardless of what terms the magistrate has imposed. *United States v. Travis*, No. 97-6102, 1997 WL 678524, *1 (6th Cir. Oct. 28, 1997) (citations omitted). *See, e.g., United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991) (affirming district court's *sua sponte* order, entered after a hearing, overturning magistrate's decision to release defendant pending trial and ordering defendant detained); *United States v. Maull*, 773 F.2d 1479, 1486 (8th Cir. 1985) (*en banc*) (noting that 18 U.S.C. § 3142(f) gives judicial officer authority upon own motion to call a detention hearing where there is a serious risk of flight; government's failure to request detention before the magistrate does not constrain district court judge); *United States v. Delker*, 757 F.2d 1390, 1394 (3rd Cir. 1985) (district court was

7

correct in making independent determination of defendant's eligibility for bond).

As outlined above, in this case the court determined at the status conference of August 10, 2007, that conditions since the initial hearing had changed and ordered that the defendants be detained.  The court entered an appropriate order the same afternoon.  On August 14, 2007, the second working day after the initial order, the court set the hearing required by 18 U.S.C. § 3142(f) and (g).  As noted, however, between the entry of the two orders, the defendants filed notices of appeal from the detention order of August 10, 2007.

Both the defendants and the United States contend that the court is without jurisdiction to hold the detention hearing required by statute because of the intervening notices of appeal.[1]  It had been the intention of the court to hold the hearing as promptly as possible, considering the need for the probation officers to prepare a thorough pretrial release report.  Although it is the view of the court that release of the defendants on their own recognizance is no longer appropriate,

---

[1] Section 3145 of the Bail Reform Act of 1984 governs appeals by a defendant of a detention decision or the conditions of release imposed by the district court.  *See* 18 U.S.C. § 3145(c).  That section states, in pertinent part, that appeals from detention orders are governed by the provisions of 28 U.S.C. § 1291.  *Id*.  Whether this court's detention order of August 10, 2007, as opposed to an order entered after the hearing required by statute, is indeed a "final" appealable order within § 1291 is, of course, a question for the Sixth Circuit.

the court had intended to attempt to devise terms and conditions of release that would not require the detention of the defendants, but still ensure their appearance and protection of the victims' rights.  A wide variety of conditions is committed to the discretion of the court by the bail statute, including bail, home confinement with electronic monitoring, etc.  *See* 18 U.S.C. § 3142(c).

However, the briefs of the defendants and the United States are sufficient to cast some doubt on the court's jurisdiction in this situation.[2]  Therefore, rather than undertaking substantial expenditures of taxpayers' money, when the proceedings might be a nullity, and in deference to the Court of Appeals, the court will defer the hearing until the disposition of the present appeals.

Therefore, the court being in all respects sufficiently advised,

**IT IS ORDERED** as follows:

(1) Defendants' emergency motions to set aside the court's

---

[2]The position of the United States on this issue is somewhat puzzling, since if its view of the law is correct it will cause no end of mischief in the administration of criminal cases.  Under that position, a defendant who violated his terms of release could delay or avoid a revocation hearing by appealing the initial terms, thus delaying the administration of justice and inundating the Courts of Appeals with unnecessary appeals which are interlocutory in nature.  It seems to the court, as observed above, that the statute provides for a two-step process and the appeal should thus be allowed only from the order following the full-blown detention hearing.  But the court will defer on this issue at this time.

order of August 14, 2007 (Doc. ##52, 53) be, and are hereby, **GRANTED to the extent consistent with this memorandum opinion**. The hearing set for Tuesday, August 21, 2007, be, and is hereby, **CONTINUED UNTIL FURTHER ORDER OF THE COURT**;

(2) The court expresses no view as to the jurisdictional issue, and this memorandum opinion shall not be construed as a precedent with regard thereto; and

(3) The parties shall continue to prepare for trial pursuant to the present schedule.

This 20th day of August, 2007.



Signed By:
William O. Bertelsman
United States District Judge