Eastern District of Kentucky
FILED

SEP 19 2007

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL ACTION NO. 07-39 (WOB)

UNITED STATES OF AMERICA                                                    PLAINTIFF

VS.                 <u>MEMORANDUM OPINION AND ORDER</u>

WILLIAM J. GALLION,
SHIRLEY A. CUNNINGHAM, JR.
AND
MELBOURNE MILLS, JR.                                                   DEFENDANTS

This matter is before the court on defendants' motions to recuse and/or disqualify (Doc. ##61, 62, 65, 68) and a motion to supplement (Doc. #64). The United States has filed a consolidated response to the recusal motions (Doc. #74), and defendants Gallion and Cunningham have filed replies. (Doc. ##83, 84)[1]

Having reviewed this matter, the court finds that the facts and legal arguments are adequately presented in the parties' briefs and that oral argument is thus unnecessary. These motions now being ripe, the court issues the following memorandum opinion and order.

---

[1] The court notes that, as of this date, Mills still has two more days in which to file any reply. However, because the other two defendants have asked for a ruling as soon as possible, the court issues this opinion now with the benefit of their replies. Should Mills file a reply brief, the court will consider it and supplement this opinion if necessary.

### *Factual and Procedural Background*

The factual and procedural background of this case has been set forth in the court's prior orders. See Doc. ##60, 68. For brevity's sake, the court will incorporate those orders by reference so that this rather lengthy background need not be repeated here.

### *Analysis*

#### A. **Legal Standards**

Plaintiffs' motions for recusal are brought pursuant to 28 U.S.C. §§ 144 and 455.[2]

Motions for recusal are committed to the sound discretion of the district court deciding the motion. See *Youn v. Track, Inc.*, 324 F.3d 409, 422 (6th Cir. 2003) (citation omitted). Further, it is proper for the challenged judge to rule on the motion for recusal. See *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1355 (6th Cir. 1988).

The Sixth Circuit has stated that "a judge is presumed to be

---

[2]The court notes that each defendant has approached this issue differently. Defendant Gallion has filed motions pursuant to both § 144 (Doc. #51) and § 455 (Doc. #65).
Defendant Cunningham relies only upon § 455, which does not contain the requirement of a good faith supporting affidavit as does § 144. (Doc. #62)
Finally, defendant Mills moved for recusal by citing to and incorporating the motions and papers filed by his co-defendants. (Doc. #68) As Mills has not filed his own affidavit as required by § 144, however, the court treats his motion under § 455 only. As will be seen, of course, these two provisions are construed *in pari materia*, and the difference here proves immaterial.

impartial, and the party seeking disqualification bears the substantial burden of proving otherwise." *Scott v. Metropolitan Health Corp.*, – F.3d –, Nos. 05-1948, 05-2642, 06-1122, 06-1652, 2007 WL 1028853, at *8 (6th Cir. April 3, 2007) (citation omitted). "The burden is not on the judge to prove that he is impartial." *Id.*

28 U.S.C. § 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Subsection (b)(1) states that a judge shall also disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

"Under § 455, a judge must *sua sponte* recuse himself if he knows of facts that would undermine the appearance of impartiality." *Youn*, 324 F.3d at 422-23 (citing *Liteky v. United States*, 510 U.S. 540, 547-48 (1994)). *See also Easley*, 853 F.2d at 1356 (recusal under § 455 is mandated "only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned") (citation omitted).

The second relevant statute, 28 U.S.C. § 144, states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse

3

party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

Once a motion and affidavit under § 144 are filed, the district judge has the authority and duty to examine the affidavit to determine if it is timely and legally sufficient. *Berger v. United States*, 255 U.S. 22, 32 (1921).

It is well settled that sections 144 and 155 must be construed *in pari materia*. *Youn*, 324 F.3d at 423 (citation and internal quotations omitted). "The difference between §§ 144 and 455 is that section 455 is self-executing, requiring the judge to disqualify himself for personal bias in the absence of a party complaint." *Easley*, 853 F.2d at 1356 (quoting *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983)).

An affidavit filed under § 144 must allege specific facts which a reasonable person would believe indicate that a judge is personally biased or prejudiced against the moving party. *Id.* The standard is an objective one. *Liteky v. United States*, 510 U.S. 540, 548 (1994). Hence, "the judge need not recuse himself based on the subjective view of a party no matter how strongly that view is held." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990) (citation and internal quotations omitted). *See also United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992). Indeed, there "is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Id. See also Laird v. Tatum*, 409

4

U.S. 824, 837 (1972) (noting "equal duty" principle).

The Sixth Circuit has observed that conclusory allegations do not establish bias for the purposes of a motion to recuse. *Ullmo v. Gilmour Academy*, 273 F.3d 671, 681 (6th Cir. 2001) (citation omitted). *See also Scott*, 2007 WL 1028853, at *9 (noting that under § 144, simple conclusions, opinions, or rumors are insufficient to demonstrate bias) (citation omitted).

Finally, prejudice or bias must typically be predicated upon extrajudicial sources and must result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *Liteky*, 510 U.S. at 545-55; *Youn*, 324 F.3d at 423 (citations omitted). Extrajudicial conduct "encompasses only 'personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law.'" *Youn*, 324 F.3d at 423 (citation omitted).

In *Liteky*, the Supreme Court explained several guiding principles with respect to the "extrajudicial source" factor:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . <u>Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality motion.</u> They *may* do so if they derive from an extrajudicial source; and

5

they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

* * *

<u>Not</u> establishing bias or partiality, however are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

*Liteky*, 510 U.S. at 555-56 (italics in original; underlining added).

### B. Application of These Standards to Defendants' Motions

Upon consideration of the defendants' motions and the applicable law, the court finds that the defendants' motions for recusal should be denied, whether analyzed under § 144 or § 455. That is, the facts alleged, even accepted as true, are insufficient to demonstrate that the undersigned harbors any personal bias or prejudice against defendants.

Distilled to its essence, defendants' chief concern appears to be that, prior to the status conference held in this matter on August 10, 2007, the undersigned obtained a copy of an order entered in the civil action filed against defendants in Boone Circuit Court. That order, which had been entered by Special Judge William J. Wehr on August 1, 2007, held that defendants Gallion, Cunningham, and Mills were civilly liable to the approximately 440 state court plaintiffs – who are the victims of

6

the crimes alleged in this matter - in the amount of $42 million. (*See* Doc. #72, Exh. A) This court referenced the state court order during the August 10, 2007 status conference, comparing the amount of the civil liability with the approximate $64 million figure alleged in the indictment. (*See* Doc. #43 at 4)

As the court has noted in its other orders, it has taken judicial notice of the existence of the Boone County Circuit order holding defendants liable for $42 million on claims arising out of the same facts alleged in the indictment here. *See* Fed. R. Evid. 201; *United States v. Garland*, 991 F.2d 328 (6th Cir. 1993). This is entirely proper, as the "weight of the evidence" against the defendants is made expressly relevant to this court's pretrial bond analysis by 18 U.S.C. § 3142(g)(2).

In his reply brief, defendant Cunningham complains that defendants were not given advance notice of the court's intent to take judicial notice of the state court judgment. This is true. However, under Fed. R. Evid. 201(e), a party may request to be heard on the propriety of the judicial notice after such notice has been taken. To date, no defendant has made such a request.

Apart from taking judicial notice of the existence of that judgment, the court has not considered any facts that may be in dispute in the state court matter, nor has it engaged in any substantive communications with Judge Wehr about the case. The court called Judge Wehr to get a copy of his order, which was

7

provided. No further communications occurred. Knowledge of this state court judgment, while relevant to the bond issues presently before the court, creates in the mind of the undersigned no personal "bias" or "prejudice" towards defendants.[3] *See, e.g., United States v. Archibald-Newball*, 554 F.2d 665, 681-82 (5th Cir. 1977) (holding that trial judge's statements during bond hearing concerning knowledge of evidence gained from other proceedings does not support recusal motion; allegedly prejudicial statements "were directed to the weight of the evidence" against defendants and the judge's reasons for denying bail).

The balance of defendants' motions rests on the undersigned's statements and rulings during the pretrial bond proceedings held thus far. As the Supreme Court held in *Liteky*, however, judicial rulings and judicial remarks, even hostile

---

[3]The court notes that the statements contained in defendant Gallion's affidavit on this point (Gallion Affidavit ¶¶ 22, 26) are far more narrow that the characterizations contained in counsel's brief. The ministerial act of requesting a copy of the state court's order cannot be said to constitute, as counsel states, "an in-depth investigation." (Doc. # 61 at 5) Considering the purpose of the § 144 affidavit, the court finds this distinction important.

Moreover, under § 455, "the judge is free to make credibility determinations, assign to the evidence what be believes to be its proper weight, and to contradict the evidence with facts drawn from his personal knowledge." *Scott*, 2007 WL 1028853, at *10 (citation omitted). Thus, to the extent that counsel has incorrectly characterized the nature of the court's contact with Judge Wehr, the court has taken this opportunity to set forth the accurate facts.

ones, almost never constitute a valid basis for a bias or partiality motion. *Liteky*, 510 U.S. at 555-56.

Defendants argue that the court is biased against them based on the court's admonishments at the August 10, 2007 status conference concerning the parties' lack of preparation and requests for a continuance. What defendants ignore, however, is that the court's emphatic remarks about the importance of public perception and handling the case promptly – and its annoyance at the parties' apparent lack of diligence – were directed at <u>both</u> defendants and the government.

The court has no personal bias towards any party in this matter. Prior to this case, it had never met any of the defendants. What the court does have, however, is a judicial policy in favor of not allowing cases to languish. It was apparent to the court on August 10 that neither side was taking seriously the court's previous order that the October 2007 trial date would be adhered to absent exceptional circumstances. *See* Doc. #41.[4] The court's actions in the administration of its docket – "even stern and short-tempered" ones – do not establish personal bias or prejudice against the parties. *Liteky*, 510 U.S. at 556.

Further, while the court's remarks to counsel may have been

---

[4] That trial date had been set, not by the undersigned, but by the Magistrate Judge. *See* Doc. #31.

9

harsh, a statement "that indicates frustration with counsel's behavior is not enough to establish bias or prejudice." *Consolidated Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999). *See also Refior v. Lansing Drop Forge Co.*, 124 F.2d 440, 444-45 (6th Cir. 1942) (hostile comments by trial judge indicating irritation at request for continuance and perceived dilatory tactics are not sufficient basis for recusal).

Defendants also argue that the court's rulings thus far regarding their pretrial detention indicate personal bias or prejudice. However, it is well settled that the fact that defendants are unhappy with the court's rulings or believe them to be erroneous does not require recusal. *See Scott*, 2007 WL 1028853, at *16 ("With regard to the judge's rulings against Scott, bias cannot be inferred from a mere pattern of rulings by a judicial officer, but requires evidence that the officer had it "in" for the party for reasons unrelated to the officer's view of the law, erroneous as that view might be.") (internal quotations and citation omitted).

Defendants place much emphasis on the difference between the actions of the Magistrate Judge, who initially released defendants on their own recognizance, and the actions of the undersigned, who ordered defendants detained pending a further hearing and the production of certain financial information. As the court has previously noted, however, it is well settled that

10

the district court "has jurisdiction to reopen the bail issue on its own motion," regardless of what terms the magistrate has imposed. *United States v. Travis*, No. 97-6102, 1997 WL 678524, *1 (6th Cir. Oct. 28, 1997) (citations omitted). *See also United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991); *United States v. Maull*, 773 F.2d 1479, 1486 (8th Cir. 1985) (*en banc*); *United States v. Delker*, 757 F.2d 1390, 1394 (3rd Cir. 1985).

The court's reasons for its rulings to date as to pretrial release are set forth extensively in its prior orders. Suffice to say that, as of August 10, 2007, the court believed that insufficient conditions had been imposed to assure defendants' continued appearance at trial and to prevent possible dissipation of assets potentially subject to forfeiture or restitution.

Similarly, following the reopened hearing held on September 10 and 11, 2007, the court found that further information about defendants' assets should be provided before the court could determine appropriate conditions of release. *See* Doc. #78.

In their briefs in support of recusal, defendants argue that the conditions imposed by the court in relation to pretrial bond issues are improper, namely the production of certain financial information. The court notes that, to the extent that defendants find error in the court's most recent pretrial detention order, they are afforded a right of immediate appeal by 18 U.S.C. § 3145(c). It would be improper to circumvent that statute by

11

allowing a defendant to challenge their pretrial detention under the guise of a recusal motion, given the authority cited above that a court's rulings in a case do not provide an adequate ground for disqualification. *See Liteky*, 510 U.S. at 555. *See also United States v. Devlin*, 284 F. Supp. 477, 481-82 (D. Conn. 1968) (holding that displeasure on the part of a defendant in a criminal case with the ruling of the judge fixing bail is insufficient as a matter of law to establish personal bias or prejudice required for disqualification; at most, court's statements reflected "definite views" with respect to the necessity of substantial bail to assure presence of defendants).

To the extent that defendants argue that the court's handling of the pretrial detention reflects bias, however, several points should be noted. Defendants urge that the court has treated their case in an unusual manner by, for example, requiring the Probation Office to investigate defendants' assets and calculate the possible Sentencing Guidelines. As the court noted at the most recent hearing, however, this is an unusual case and, as far as the undersigned's memory serves, unprecedented in this court in terms of the sum of money alleged in the indictment: $65,000,000.00.

Further, the court's inquiry into defendants' assets goes not only to the question of what bond may be appropriate under 18 U.S.C. § 3142(g), *see United States v. Geerts*, 629 F. Supp. 830,

832 (E.D. Pa. 1985), but it also goes to the court's duty under the Crime Victims' Rights Act to ensure that the rights of the alleged victims to "full and timely restitution" are protected, should this matter result in any conviction. *See* 18 U.S.C. §§ 3771(a)(6), (b)(1) ("In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a).").

These considerations also account for the court's concerns that funds at issue in this matter may have been, or will be if sufficient protective measures are not put into place, transferred beyond the reach of the government. As noted in the most recent detention hearing, one or more transfers by each defendant were identified as being potentially fraudulent.[5] The court has made no determination that any fraudulent transfers have, in fact, taken place. It merely recognizes the relevance of the risk of such obstruction of justice under the bond statute, 18 U.S.C. § 3142(f)(2)(B), and its order regarding the production of financial records is intended to address these concerns.

Gallion also argues in his reply brief that the required production of financial information reflects bias because it is unconstitutional. Again, this is a term of the detention order

---

[5] The portion of the transcript of this hearing dealing with defendants' financial matters is under seal. However, the parties are privy to this information.

13

that may be directly appealed under 18 U.S.C. § 3145(c). However, the court notes that requiring the production of financial information for the purpose of determining conditions of pretrial release has been held not to violate a defendant's Fifth Amendment right against self-incrimination. *See United States v. Rechnitzer*, No. 05-CR-368, 2007 WL 676671, at *5-6 (N.D.N.Y. Feb. 28, 2007). Again, the court imposed this requirement, not because of any bias or prejudice towards defendants, but because of the unusual nature of this case and the statutory considerations outlined above and in its other orders.

Several miscellaneous points raised by defendants remain to be addressed. Defendant Cunningham complains that the court denied a request by all parties to meet with the undersigned in chambers at the conclusion of the August 10, 2007 hearing. (Doc. #62 at 7 n. 8) However, this defendant does not state what the basis for the request was or how its denial reflects bias or prejudice by the undersigned against him. The August 10 status conference was a public proceeding to which the victims of the alleged crimes have a statutory right of access. *See* 18 U.S.C. § 3771(a)(3). That the court adhered to this provision reflects nothing more than an application of the law.

Finally, defendants complain that the court's remarks to the effect that the legal profession and judiciary are "on trial" in

14

this matter evidence personal bias. The court disagrees. The very point of the court's remarks in this regard was precisely the opposite. That is, the court considers it particularly important in a criminal matter such as this, where members of the bar are accused of defrauding their clients, that the matter proceed expeditiously and not be subject to claims of special treatment. That the court holds a particular view of the law, or that it considers some crimes more serious than others, is not evidence of a personal bias which requires recusal. *See United States v. Burger*, 773 F. Supp. 289, 292 (D. Kan. 1991) ("Recusal may not be based upon judicial bias, *i.e.*, the judge's view of the law."); *United States v. Guglielmi*, 615 F. Supp. 1506, 1511 (that the court may view a particular type of crime as more serious than others does not equate to personal bias or prejudice against the defendant); *Smith v. Danyo*, 441 F. Supp. 171, 180 (M.D. Pa. 1977) (holding that an attitude or feeling a judge may entertain toward subject matter of a case does not disqualify him). Indeed, the court would hold the same view of this type of case regardless of the identity of the defendant(s).

### *Conclusion*

That defendants may subjectively believe that the undersigned district judge is biased or prejudiced against them does not justify recusal where the record, viewed objectively, does not support such a conclusion. *United States v. Sammons*,

15

918 F.2d 592, 599 (6th Cir. 1990). The court finding this to be the case, the recusal motions must be denied.

Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that defendants' motions to recuse and/or disqualify (Doc. ##61, #62, 65, 68) be, and are hereby, **DENIED**. Defendant Gallion's motion to supplement (Doc. #64) be, and is hereby, **GRANTED**.

This 19th day of September, 2007.

*William O. Bertelsman*

**WILLIAM O. BERTELSMAN, JUDGE**